BEN ADLER ET AL. *v.* LEON MEYER ET AL.

JUDICIAL SALES. *Chancery court. Possession of purchaser. Confirmation.*

On setting aside a conveyance for fraud, and subjecting to the complainants' demand the lands therein described, it is error for the chancery court to direct that the purchaser at the sale under its decree be put in possession prior to confirmation of such sale.

FROM the chancery court of Claiborne county.

HON. CLAUDE PINTARD, Chancellor.

On the tenth day of March, 1890, M. B. Herman, who had been merchandising at Hermanville, sold his stock of merchandise, notes and accounts, and a large quantity of real estate, to Ben Adler. At the time of this sale Herman owed Leon Meyer about $1,000. Meyer brought suit against Herman on this debt. After the sale to Adler, Meyer obtained a judgment, on which an execution was issued, and, a levy having been made on the land sold to Adler, the sheriff advertised it for sale under said judgment. After the levy under this judgment, Adler sold most of the land to J. Jacobsburg, in conjunction with whom he filed the bill in this case for an injunction to restrain the sheriff and Meyer from selling the lands under the execution, setting out the foregoing facts, and further alleging that he was a *bona fide* purchaser for value from Herman. Meyer answered, making his answer a cross bill, and alleged that the conveyance from Herman to Adler was a fraudulent device contrived by Herman, Adler and Jacobsburg to hinder, delay and defraud creditors; that the price named in the conveyance to Adler was grossly inadequate; that there were other and secret considerations than that named in the conveyance, to wit: Adler was to pay a stipend to Herman for some unknown period, and another to Herman's sister, and that there was a secret understanding between Adler and Herman that Adler

was to reconvey the property to Herman when he (Adler) was paid an amount he had advanced to pay a debt due by Herman to the Adler-Goldman Commission Company; that Jacobsburg, as the mutual friend of Adler and Herman, knew of the fraudulent device, and was simply used by them in carrying out the fraudulent scheme; that Jacobsburg had been managing the business for Herman, who had been out of the state for more than a year prior to the sale to Adler, and that he continued to manage it until he finally purchased from Adler. The bill asked for the setting aside of the conveyance from Herman to Adler, and the one from Adler to Jacobsburg, and that so much of the land as might be necessary be sold to pay complainants' judgment and costs.

The answer of Adler and Jacobsburg denied all the material allegations of the bill. There was a great deal of evidence taken on both sides, and it was shown that Jacobsburg, after the sale to Adler, had paid Mrs. Julia Meyer, a sister of M. B. Herman, $550 in monthly installments of fifty dollars and had paid to Herman about $975. Adler and Jacobsburg both admitted that these amounts were paid, and testified that they were agreed to be paid at the time of the sale as an additional consideration to that recited in the deed.

On final hearing the chancellor dissolved the injunction and held the deeds from Herman to Adler and from Adler to Jacobsburg to be fraudulent and void as to the realty attempted to be conveyed, in so far as they affected the right of Meyer, and rendered a decree absolute against both Adler and Jacobsburg for the amount of the judgment and costs. He also awarded damages on the injunction for attorney fee and costs, and subjected the lands, directing the commissioner to sell them and put the purchasers in possession. Complainants appealed from that decree.

*J. McC. Martin* and *Brame & Alexander*, for appellants.

Herman wished to have all his debts paid, and Adler knew

this and supposed he was paying all of them. He knew nothing of the debt to Meyer. His only motive was to save the large debt to his house, the Adler-Goldman Commission Co. He was merely paying out in cash $4,000 and taking a lot of mercantile assets and lands of uncertain value to collect what was due him. There is nothing fraudulent in the fact that Adler paid Herman $975 and his sister $550 in cash as part of the trade. It was not a secret trust in the assets. It was part of the consideration. Neither Herman nor Mrs. Meyer got any part of the assets. A different consideration, or other consideration than those mentioned, may always be proved, and, if not unlawful, the transaction will stand. Even if Adler had known that Herman owed Meyer and did not intend to pay him, the cash so paid would not have rendered the purchase fraudulent. *Hirsch* v. *Richardson*, 65 Miss., 227.

Even if Adler had agreed to reconvey to Herman after realizing his debt and advances, or to give Herman the preference to repurchase, that would not be a fraud on creditors, there being no secret benefit reserved to Herman. If the conveyance be valid as a mortgage, it should stand. Meyer could subject the equity of redemption. If Meyer had garnished the sums agreed to be paid Herman, he could have subjected them, but the agreement to pay them, and subsequent payment, do not render the whole transaction void. It does not even appear that Herman did not owe his sister. The burden was on Meyer.

The case, in its essential features, is governed by *Tuteur* v. *Chase*, 66 Miss., 476; *Goyer* v. *Wildberger*, 71 Miss., 438; *Hirsch* v. *Richardson*, 65 Miss., 227; and, if viewed as a new security, then, by *Cary Lumber Co.* v. *Cain*, 70 Miss., 628. The decree is erroneous in two other respects, even if fraud is assumed to be proved. It decrees that complainants, Adler and Jacobsburg, pay the judgment of Meyer against Herman, and, in default of doing so, the lands shall be sold. It ought to direct a sale unless they elect to pay within a reasonable

time.    It directs the commissioner to put the purchaser at the
sale into possession of the land.

*E. S. & J. T. Drake,* for appellees.

The price named in the conveyance from Herman to Adler
was grossly inadequate.    The price named is $9,676.66—not
one-half the actual cash value.    This appears from the deed
itself and its exhibits.    Jacobsburg finally admitted that the
property was worth $15,000.    So that it conclusively appears
that the conveyance was made to Adler for a grossly inadequate
consideration.    This alone would avoid the sale as to the excess,
which is more than Meyer's debt.    Unlike the case of *Redfield*
v. *Hews,* 67 Miss., 479, the great excess in value is conclu-
sively shown by the evidence.

Where the difference between the price paid and the actual
value is apparent, the conveyance will be regarded as vol-
untary to the extent of the excess.    8 Am. & Eng. Enc. L.,
761; *Ib.,* 769 and note.    But the proof shows, without sub-
stantial conflict, that there was a secret trust reserved in favor
of Herman and his sister.    Deeds absolute on their face, but
accompanied by a secret trust, are fraudulent.    8 Am. & Eng.
Enc. L., 761.    Absolute deeds by way of security are fraudu-
lent.    *Ib.,* 761 and note.    One of the surest tests of a fraudu-
lent conveyance is that it reserves to the grantor an advantage
inconsistent with its avowed purpose.    *Thompson* v. *Furr,* 57
Miss., 484.    In the case of *Redfield* v. *Hews,* all the money
paid by the vendee went to the creditors of the vendor.    Here
a large part of the real consideration went to the vendor and
his family.

*C. A. French,* on same side.

The fact that Herman conveyed so much property to Adler
for so much less than it was worth and then gave the residue
to his sister, who was never in possession of it, is sufficient to
taint the whole transaction with fraud and vitiate the conveyance.

*Harmon* v. *Hoskins*, 56 Miss., 142.   A grantee who accepts such a conveyance with knowledge of its character, or has reasonable ground to suspect it, forfeits its advantage, although the consideration may be meritorious.   *Thompson* v. *Furr*, 57 Miss., 478.   Creditors may treat the fraudulent conveyance as if never made.   *Thompson* v. *Neely*, 50 Miss., 310; *Pulliam* v. *Taylor*, 50 Miss., 251.   If the grantor in a general assignment retains any of the property assigned, the assignment will be void.   *Baum* v. *Pearce*, 67 Miss., 700.

WOODS, J., delivered the opinion of the court.

A very careful and full examination of the entire transcript leaves on our mind no doubt of the correctness of the decree of the court below on all the material questions presented.   But the direction of the decree which authorizes the purchaser or purchasers at the sale therein ordered to be put in possession, is erroneous.   Before this can be done, there must first be a report by the commissioner appointed to make the sale, and a confirmation of such sale by the court.   Under the decree as drawn, appellants would have been required to surrender possession on sale, and before report and confirmation of the sale. It is fair to suppose that the appellants would have submitted to the decree, and the purchasers would have been immediately put in possession, in which case the appellants would have been subjected to inconvenience and damage by the premature ejection.   Except as to the direction that the purchasers shall be put in possession on sale, the decree is affirmed, and this useless direction will be stricken out here.

This is a proper case for apportionment of the costs of the appeal to this court.   Of these costs, the appellants will be required to pay two-thirds, and the appellees the remaining one-third.

*A decree as above indicated will be entered here.*